IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

WHITING CORPORATION,                )
                                    )
              Plaintiff             )        No. 02 CH 6332
                                    )
       v.                           )        Judge Patrick E. McGann
                                    )        Calendar 6
                                    )
MSI MARKETING, INC.                 )        (As related to the list of cases
                                    )        attached hereto as Exhibit 1
              Defendants.           )        pursuant to General Order 22)

## MEMORADUM OPINION AND ORDER

### I    INTRODUCTION

Commencing in 2001, numerous plaintiffs have filed more than 30 complaints in the Circuit Court of Cook County, Illinois seeking relief against various defendants for actions involving the sending and receipt of advertisements via telephone facsimile machines. These actions were assigned to this Court, as related by the Presiding Judge of the Circuit's Chancery Division.

Court and Counsel have conducted case management conferences in an effort to create an efficient management plan for the processing of these cases. As a result, this Court entered a case management order which allowed defendants to file consolidated Motions to Dismiss the separate or consolidated complaints filed by the Plaintiffs. The Court also required the Plaintiffs in those cases to file a consolidated response. A list of all the cases to which this order applies is attached as Exhibit A. The court on a later date will entertain any Motions to Dismiss that raise individual issues pertinent only to the moving party.

On March 4, 2003, the Court allowed the United States of America to intervene as one of the issues raised in the consolidated Motions was the constitutionality of 47 U.S.C. 227 (b)(1)(c). The Court also entertained oral argument on these consolidated Motions on that date. The grounds and issues raised in those motions will be discussed as they relate to each theory of recovery.

Each of the complaints seeks money damages on three theories: 1) the private right of action granted to each recipient of an unsolicited telephone facsimile advertisement. 47 U.S.C. 227(b)(3)("TCPA"); 2) violation of the Illinois Consumer Fraud and Deceptive Practices Act. ("ICFA") 815 ILCS 505/2; and 3) common law conversion.

The well-pled facts as they relate to these motions allege that each plaintiff received an unsolicited advertisement via the use of their personal telephone facsimile machine This action limited each plaintiff's access to equipment used in their business or occupation or for personal use. This activity also converted each plaintiff's personal property, to wit, paper and toner, to their own use.

## II    CONSTITUTIONALITY OF REGULATION OF TELEPHONE FACSIMILE ADVERTISING

The defendants in their consolidated Motion to Dismiss the plaintiffs' claims brought pursuant to the TCPA, assert that the regulation of advertisement by telephone facsimile is unconstitutionally vague and unnecessarily impinges on freedom of speech rights granted by the First Amendment. In addition, they argue that the TCPA violates the advertiser's Due Process Rights under the Fifth and Fourteenth Amendments and imposes excessive fines in violation of the Eighth Amendment.

The Telephone Consumer Protection Act of 1991, codified at 47 U.S.C. 227, provides in relevant part; "It shall be unlawful for any person...to use any (transmitting device) ...to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. 227 (b)(1)(c). The term "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. 227(a)(4). Thus, the TCPA prohibits only commercial advertising.

As the statute in question seeks to regulate commercial speech, it must meet the test set out in Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 57 (1980). Initially, it must be observed that commercial speech is different from other varieties of speech because it proposes a commercial transaction which traditionally occurs in an area subject to governmental regulation. Ohralik v. Ohio

State Bar Assn., 436 U.S. 447, 445-456 (1978)  However, any regulation of such speech must be cognizant of the controlling principle that our union depends on a free enterprise economy. The allocation of societies resources depend upon a free flow of information. Thus, it is in society's interest that a free flow of information be maintained so that the consumer has enough information to make intelligent and well informed decisions. Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc., 425 U.S. 748 (1976)

In order to maintain the balance between the limited ability of government to regulate commercial speech and the consumer's right to the full and free flow of information, the Court in Central Hudson adopted a four part analysis to determine the constitutionality of any proposed restriction on commercial speech. First, the court must determine whether the speech comes within the First Amendment. To be protected, such speech must concern lawful activity and not be misleading. Next, the court must determine whether the government's interest in regulating the communication is substantial. If these two tests are met, then a determination must be made as to whether the regulation directly advances the governmental interest asserted and whether it is not more extensive than necessary to serve the asserted interest. Central Hudson, 447 U.S. at 566.

Applying this analysis to the TCPA's ban on unsolicited telephone facsimile advertising, it is clear there is no claim that any of the information distributed is misleading or promotes any illegal activity

The Plaintiffs bear the burden of establishing that the legislation survives the remainder of the analysis. Florida Bar v. Went For It, Inc., 515 U.S. 618 (1995). The Plaintiffs and the intervening Petitioner United States of America, posit that the TCPA was enacted to address the substantial government interest of preventing the shifting of the cost of advertising to the potential consumer and the economic disruptions caused by the intrusive activity of the defendants. The Plaintiffs include this later interest under the broad umbrella of "invasion of privacy." The court's determination of substantial governmental interest is limited to these two pronouncements. This court cannot engage in supposition to find additional interests in need of protection. Edenfield v. Fane, 507 U.S. 761, 768 (1992). The burden of establishing these interests is not satisfied by mere speculation or conjecture. There must be a demonstration that the harms cited are real.

3

Edenfield, 507 U.S. at 770-71. The evidence of the governmental interest can come from anecdotes, studies, literature published in the issue. Edenfield, 507 U.S. at 771-773; See also Florida Bar, 515 U.S. at 626-627.

The proponents, observe that 15 states, including Illinois, have enacted similar bans on unsolicited facsimiles. They also note that two separate Congresses held hearings on the issue. Subcommittees took testimony on the issue and members noted anecdotal information from constituents on the issue. One Congressman, Edward Mackey of Massachusetts, likened receiving an unsolicited fax to receiving "junk mail with the postage due." Private citizens from various walks of life, including the legislative counsel for the American Civil Liberties Union, noted the burden imposed on consumers by the cost shifting effect of receiving an unsolicited advertisement by telephone facsimile.

The Congress also received testimony as to the business disruption caused by this activity. Witnesses testified as to the inability to access equipment because it was occupied by an uninvited user. Evidence was also taken which indicates necessary or anticipated communications were disrupted.

There is no record of similar proceedings in the Senate. However, the bills of both Houses were reconciled in committee. The Court, without invading the separation of powers, cannot find or conjecture that anything but a complete consideration of the issues occurred when the TCPA was enacted.

In reviewing the constitutionality of a statute, courts must accord substantial deference to the predictive judgments of Congress. The Supreme Court has recognized that Congress is better equipped than the judiciary to amass and evaluate the vast amounts of data bearing upon legislative questions. Even in the realm of First Amendment, questions where Congress must base its conclusions upon substantial evidence, deference must be accorded to its findings as to the harm to be avoided. Turner Broadcasting System, Inc., v. F.C.C., 520 U.S. 180, 195-196 (1996). Thus, it appears to this Court that the government has a substantial interest in preventing the cost shifting of advertising and the unwanted disruption of economic activity.

The defendant's argue that improved technology has substantially reduced that burden. Modern fax machines no longer use expensive special papers. Increased

4

memories allow for multi-tasking by the equipment virtually eliminating the "temporary kidnapping" of facsimile machines. Thus, they posit, any interests identified by Congress have dissipated. The Congress, perhaps in anticipation of the vast explosion in technology, received testimony concerning the increased capacity of the senders of these messages. Indeed, one of the defendants, Fax.Com, solicits customers with a promise to save more than 75% over direct mail costs. The Court can infer that some of these savings are passed on to consumers who must now pay for the printing. Evidence adduced in other cases involving this issue confirm the problems identified by the Congress still exist. See, Missouri ex. Rel. Nixon v. American Blast Fax, Inc., 196 F. Supp. 2d 920, 924-26 (testimony concerning business disruptions, preventing access to phone lines, occupying personnel with other duties, increased capacity of facsimile senders). Nothing presented by the defendants undermines the continued existence of the identified and substantial government interests.

The defendants also assert that the prohibition of these facsimile transactions is not dissimilar to the receipt of junk mailings. While it is true that the Court could find no substantial interest in prohibiting the distribution of unwanted "junk mail", Bolger v. Young Drug Products Corp., 463 U.S. 60 (1983), the Court was never asked if the recipient was also required to pay the "postage due" on the mailing or pay a toll on the trip to the wastebasket, let alone subsidize the mailer's printing expense.

The defendants also place great emphasis on Missouri ex. rel. Nixon v. American Blast Fax, Inc., supra. Unfortunately, as is the fate of all trial judges, the Appellate panel found fault with Judge Limbaugh's analysis see Missouri ex. rel. Nixon v. American Blast Fax, Inc., 2003 U.S. App. Lexis 54/69(8th Cir. 2003)(Doc. 02-2705/2707).

Having found the existence of two substantial governmental interests, the Court must determine whether the legislative enactment directly addresses these interests. This requires the Plaintiffs to demonstrate the restriction imposed will not only advance the governmental interest, but do so to a material degree. 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 505 (1996). This Court does not find that the TCPA creates a complete ban on telephone facsimile advertising. There is nothing in the law that prevents a distributor from soliciting and obtaining consents for such advertising. This can be done in a number of ways such as direct mail or contact, solicitations in printed

media, or telephone solicitation. Perhaps the best way to identify the parameters of this requirement is to furnish examples of restrictions that were found unrelated to the asserted interest. The City of Cincinnati, no doubt attempting to dissipate any image from its nickname Porkopolous, enforced an ordinance limiting news racks in order to improve community esthetics. The result was a reduction of the over 1600 such racks by 62. The publications using these racks were not "mainstream" media. The reduction in unsightly news boxes was in the words of two courts "paltry" or "minute." The regulation, however, was found to have no relation to the stated governmental interest. City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 424 (1993). Similarly, a ban on radio advertising of private state government authorized casino gambling by a federal regulation was found to have no relation to the recognized government interest of reducing gambling. This result was reached because the ban excluded promotion of Indian sponsored casinos and state run lotteries. Greater New Orleans Broadcasting Assn. v. United States, 527 U.S. 173 (1999).

This restriction directly and materially advances the governmental interest in the efficient operation of commercial enterprises. The cost to industry both in increased operating expenses and lost productivity, was amply demonstrated to Congress.

The defendants note the failure to include unsolicited non-commercial faxes supports their position that the goals of the government are not being advanced by the TCPA. These faxes also shift costs and disrupt the orderly conduct of business. They cite to decisions such as Greater New Orleans and Rubin v. Coors Brewing Co., 514 U.S. 476 (1995). Each of these cases had one distinguishing fact, there was no basis to suggest the bans in those cases would advance the stated goals. Gambling would not be reduced because Indian sponsored casinos and lotteries could be promoted. Temperance would not be promoted, because alternate means of advertising the alcoholic content of beer was available.

More importantly, the Congress heard evidence than private or non-commercial facsimile transmissions represented but a small percentage of unsolicited messages. Most recipients welcomed the message. Thus, no concern over this segment of unsolicited messaging was ever expressed to the Congress.

The other issues raised by the defendants are equally unpersuasive. The Supreme Court has noted that unsolicited junk mail cannot be prohibited because "the short, though regular journey from mail box to trash can…is an acceptable burden so far as the Constitution is concerned." Bolger v. Youngs Drug Products Corp., 463 U.S. at 72 quoting Lamont v. Commissioner of Motor Vehicles, 269 F. Supp. 830, 883 (S.D.N.Y. 1967). There can be no greater cost in taking the short regular walk to the telephone and hanging up on an unsolicited telemarketer. Some of our more imaginative fellow citizens may actually enjoy the exercise as a diversion from the inspired television, or tense moment at the dinner table.

The final prong is the determination that the regulation is not more extensive than necessary to serve the asserted interest. This, in the area of commercial speech, does not mean the least restrictive means. The case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends. Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 556 (1999). The defendants posit that there were numerous less restrictive alternatives such as allowing one free fax allowing the recipient to notify the sender of the desire not to receive further messages. Another suggestion would be the creation of a "no-fax" list similar to that established by the government to reduce unwanted telemarketing. The defendants also suggests that regulations as to the times when fax messaging can occur would also be less restrictive.

The Plaintiffs and the Intervening United State of America attempt to shift the burden of disproving the existence of the fourth prong of the Central Hudson test. The standard, however, is that the proponent of the statute must show that Congress "carefully calculated the costs and benefits associated with the burden on speech imposed by the regulations." City of Cincinnati, 507 U.S. at 417.

To make this determination, it appears to this Court it is important to understand the effect of the TCPA ban on unsolicited commercial telephone facsimile messaging. This statute does not prevent any person engaged in commercial activity from either sending or receiving information about that activity. In fact, it does not prohibit the use of telephone facsimile devices for advertising. It requires the advertiser to identify those persons who are willing to expend their resources both in time and money to receive the commercial messages being sent.

It prohibits the advertiser from passing part of its costs on to a potential consumer. From this understanding, the Court must determine if the restriction imposed while perhaps not the single best disposition is one whose scope is in proportion to the interest served. Board of Trustees of the State University of New York v. Fox, 492 U.S. 469, 480 (1989). The suggestions of the defendants as to regulation of message delivery times does nothing to advance the government interest of preventing cost-shifting. It is also apparent that the concerns Congress addressed in the TCPA were different in the regulation of telemarketers and facsimile advertising. There was a clear recognition of the substantial interference caused by the blast fax industry. It is not this Court's role to substitute its judgment for that of the Congress. The ban on unsolicited commercial telephone facsimile messaging is a reasonable means to the stated government end.

The defendants posit that section 227(b) of the TCPA is unconstitutionally vague. They argue the definition of the term "unsolicited advertisement" is so vague that persons of common understanding must necessarily guess at its meaning. This ambiguity is exacerbated because senders are subject to private claims, creating a likelihood of differing interruptions in various jurisdictions.

The Due Process Clause of the Fifth Amendment to the United States Constitution made applicable to the various states by the Fourteenth Amendment is fundamentally violated by "any statute which either forbids or requires the doing of any act in terms so vague that (persons) of common intelligence must necessity guess at its meaning and differ to its application." Connally v. General Construction Co., 269 U.S. 385, 391 (1926). In Connally, the Court found a statute requiring, under progressive penalties, that workers be paid the "current rate of wages" in the "locality" where they were working to be too vague to satisfy Due Process concerns. The Court noted that the term "locality" had no definition as to what area constituted a locality. Mr. Justice Sutherland, writing for the Court, noted that reasonable people could differ as to the boundary of the "locality." The Court indicated that terms that are elastic or dependent on circumstances were problematic. Similary, the Court found the term "current rate of wages" too vague. The Court noted that rates of pay had various levels begetting a minimum or maximum or an amount in between. This uncertainty left an employer to guess at the required payment. The Court also observed that judges and jurors had no standards by which to

judge an accused's conduct. This could lead to very inconsistent results in the prosecution of alleged violations.

Contrasting the Connally decision with the Court's decision in Roberts v. United States Congress, 468 U.S. 609 (1984) gives a clearer understanding of the principle. In that case, the Jaycees challenged a determination by the Minnesota Human Rights Department that it denied access to a "place of public accommodation" on the basis of the applicant's gender. The Jaycees argue that the term's definition was to vague to satisfy Due Process Requirements. This term was defined by Minnesota Law as "a business accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services or facilities, privileges, advantages, or accommodations are extended, offered, sold or otherwise made available to the public." 468 U.S. at 469. Membership in the Jaycees was offered to any male applicant aged 21-35 who paid the appropriate fees. Women were accepted as Associate Members but were denied certain benefits given to their male counterparts.

The Jaycees main argument focused on Minnesota's decision that this organization was a public place of accommodation while a similar group, the Kiwanis Club, was not. This created, according to the Jaycees, the sort of vagueness the Due Process Clause was designed to prohibit. In dismissing this argument, the Court found that unlike the open enrollment policy of the Jaycees, Kiwanis Clubs has a formal procedure for choosing members based on specific and selective criteria. These additional standards were clearly outside the contested definition found in the Minnesota law.

Turning now to the TCPA, an "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property goods or services." 47 U.S.C. 227 (a)(4). Merriam Webster defines commercial, when used as an adjective, in numerous ways, including, "work intended for commerce, producing artistic work of law standards for quick market success, suitable, adequate or prepared for commerce, and emphasizing skills or subjects useful in business." Merriam Webster's Collegiate Dictionary, 10th Ed.1994. In addition, at least one commentator has identified distinctions between commercial and non-commercial speech found in the Supreme Court's analysis of this issue. First, the truth of the information is more easily verifiable, and secondly, it is engaged in "for profit". Kosinski and Banner, "Who's Afraid of

Commercial Speech?", 76 Va.L.Rev. 627, 634. Admittedly, the authors argue that these are distinctions without difference, this Court, however, must acknowledge and give deference to these well established principles continually enunciated by our Supreme Court.

Prior to answering the question as to whether the statute is vague by subjecting it to questions presented by hypothetical situations, the Court must determine if the defendants conduct comes clearly within the proscription of the statute. Village of Hoffman Estates v. The Flipside, Hoffman Estates, 455 U.S. 489, 495 (1981). Clearly, they do. Each facsimile message advertises the price and availability of services, such as, internet connections, long distance or cellular telephone service, or products such as packaged learning programs, toner for facsimile and other printing devices. Thus, the defendants should not be heard to complain of the statute's vagueness.

Assuming arguendo, that the Defendant's hypotheticals should be considered, the Court's analysis suggests the following resolutions. A carwash or candy sale is not conducted by a high school band for profit in the business sense of the word "commercial." A plea to oppose apartheid in the manner suggested does not advertise the commercial availability or quality of a product, nor does the announcement, without more, of an essay contest. A warning concerning the danger of a product would be subject to an affirmative defense of necessity, 720 ILCS 5/7-13, or privilege.

The availability of private enforcement of the statute does not give the theoretical plaintiffs "unrestrained power...(to) charge a person with a violation." Kolender v. Lawson, 461 U.S. 352, 359 (1983). As indicated, the statute has a clear meaning and is easily understandable by persons of common intelligence. A defendant wrongfully sued would have all remedies that are available to any person so situated.

Thus, this Court does not find the TCPA to be violative of the Due Process prohibition against a vague statute.

The defendants finally assert that the TCPA's damage clause violates the Due Process of the Fifth and Fourteenth Amendments, as well as, the excessive fine clause of the Eighth Amendment.

The Due Process Clause of the Fifth and Fourteenth Amendments prohibit federal and state governments, respectively, from imposing a "grossly excessive" punishment on a