2004 SEP 29 0118

data bearing upon legislative questions. Even in the realm of First Amendment, questions where Congress must base its conclusions upon substantial evidence, deference must be accorded to its findings as to the harm to be avoided. *Turner Broadcasting System, Inc. v. F.C.C.*, 520 U.S. 180, 195-196 (1996). Thus, it appears to this Court that the government has a substantial interest in preventing the cost shifting of advertising and the unwanted disruption of economic activity.

The defendants argue that improved technology has substantially reduced that burden. Modern fax machines no longer use expensive special papers. Increased memories allow for multi-tasking by the equipment virtually eliminating the "temporary kidnapping" of facsimile machines. Thus, they posit, any interests identified by Congress have dissipated. The Congress, perhaps in anticipation of the vast explosion in technology, received testimony concerning the increased capacity of the senders of these messages. Indeed, one of the defendants, Fax.Com, solicits customers with a promise to save more than 75% over direct mail costs. The Court can infer that some of these savings are passed on to consumers who must now pay for the printing. Evidence adduced in other cases involving this issue confirm the problems identified by the Congress still exist. *See; Missouri ex. Rel. Nixon v. American Blast Fax, Inc.*, 196 F. Supp. 2d 920, 924-26 (testimony concerning business disruptions, preventing access to phone lines, occupying personnel with other duties, increased capacity of facsimile senders) *rev'd on other grounds, Missouri ex, rel. Nixon v. American Blast Fax, Inc.*, 2003 U.S. App. Lexis 54/69(8th Cir. 2003)(Doc. 02-2705/2707). Nothing presented by the defendants undermines the continued existence of the identified and substantial government interests.

The defendants could also assert that the prohibition of these facsimile transactions is not dissimilar to the receipt of junk mailings. While it is true that the Court could find no substantial interest in prohibiting the distribution of unwanted "junk mail", *Bolger v. Young Drug Products Corp.*, 463 U.S. 60 (1983), the Court was never asked if the recipient was also required to pay the "postage due" on the mailing or pay a toll on the trip to the wastebasket, let alone subsidize the mailer's printing expense.

Having found the existence of two substantial governmental interests, the Court must determine whether the legislative enactment directly addresses these interests. This

requires the Plaintiff to demonstrate the restriction imposed will not only advance the governmental interest, but do so to a material degree. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996). This Court does not find that the TCPA creates a complete ban on telephone facsimile advertising. There is nothing in the law that prevents a distributor from soliciting and obtaining consents for such advertising. This can be done in a number of ways such as direct mail or contact, solicitations in printed media, or telephone solicitation. Perhaps the best way to identify the parameters of this requirement is to furnish examples of restrictions that were found unrelated to the asserted interest. The City of Cincinnati, no doubt attempting to dissipate any image from its 19th century nickname "Porkopoleus," enforced an ordinance limiting news racks in order to improve community esthetics. The result was a reduction of the over 1600 such racks by 62. The publications using these racks were not "mainstream" media. The reduction in unsightly news boxes was in the words of two courts "paltry" or "minute." The regulation, however, was found to have no relation to the stated governmental interest. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 424 (1993).

Similarly, a ban on radio advertising of private state government authorized casino gambling by a federal regulation was found to have no relation to the recognized government interest of reducing gambling. This result was reached because the ban excluded promotion of Indian sponsored casinos and state run lotteries. *Greater New Orleans Broadcasting Assn. v. United States*, 527 U.S. 173 (1999).

This restriction directly and materially advances the governmental interest in the efficient operation of commercial enterprises. The cost to industry both in increased operating expenses and lost productivity, was amply demonstrated to Congress.

The defendants note the failure to include unsolicited non-commercial faxes supports their position that the goals of the government are not being advanced by the TCPA. These faxes also shift costs and disrupt the orderly conduct of business. They cite to decisions such as *Greater New Orleans and Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995). Each of these cases had one distinguishing fact, there was no basis to suggest the bans in those cases would advance the stated goals. Gambling would not be reduced because Indian sponsored casinos and lotteries could be promoted. Temperance would

not be promoted, because alternate means of advertising the alcoholic content of beer was available.

More importantly, the Congress heard evidence than private or non-commercial facsimile transmissions represented but a small percentage of unsolicited messages. Most recipients welcomed the message. Thus, no concern over this segment of unsolicited messaging was ever expressed to the Congress.

The other issues raised by the defendants are equally unpersuasive. The Supreme Court has noted that unsolicited junk mail cannot be prohibited because "the short, though regular journey from mail box to trash can…is an acceptable burden so far as the Constitution is concerned." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. at 72 quoting *Lamont v. Commissioner of Motor Vehicles*, 269 F. Supp. 880, 883 (S.D.N.Y. 1967). There can be no greater cost in taking the short regular walk to the telephone and hanging up on an unsolicited telemarketer. Some of our more imaginative fellow citizens may actually enjoy the exercise as a diversion from the inspid television, or tense moment at the dinner table.

The final prong is the determination that the regulation is not more extensive than necessary to serve the asserted interest. This, in the area of commercial speech, does not mean the least restrictive means. The case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (1999). The defendants posit that there were numerous less restrictive alternatives such as allowing one free fax allowing the recipient to notify the sender of the desire not to receive further messages. Another suggestion would be the creation of a "no-fax" list similar to that established by the government to reduce unwanted telemarketing. In their Reply brief, the Defendants point to recent activity in Congress to create an "established business relationship" exception to the TCPA. This, the Court is urged to find, is evidence of a congressional recognition that the current TCPA scheme is more restrictive than necessary.

The proponent of the statute must show that Congress "carefully calculated the costs and benefits associated with the burden on speech imposed by the regulations." *City of Cincinnati*, 507 U.S. at 417.

To make this determination, it appears to this Court it is important to understand the effect of the TCPA ban on unsolicited commercial telephone facsimile messaging. This statute does not prevent any person engaged in commercial activity from either sending or receiving information about that activity. In fact, it does not prohibit the use of telephone facsimile devices for advertising. It requires the advertiser to identify those persons who are willing to expend their resources both in time and money to receive the commercial messages being sent.

It prohibits the advertiser from passing part of its costs on to a potential consumer From this understanding, the Court must determine if the restriction imposed while perhaps not the single best disposition is one whose scope is in proportion to the interest served. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). There was a clear recognition of the substantial interference caused by the blast fax industry. It is not this Court's role to substitute its judgment for that of the Congress. The ban on unsolicited commercial telephone facsimile messaging is a reasonable means to the stated government end.

The recent activity in the Congress is not aimed at the regulatory scheme imposed by the TCPA, but rather on the overly restrictive and conflicting implementation by the FCC. The Court noted in a recent decision[5] that the TCPA must be interpreted broadly so as to not limit legitimate speech. This requires application of the ordinary reasonable man approach to defining terms such as "express permission or invitation." That can readily be ascertained from the circumstances under which the recipient of the message or phone number used was identified. As noted in that opinion some circumstances can be considered an express permission or invitation as a matter of law.

Finally, if the Congress does change the law or redefine terms of the TCPA, the effect can be determined at that time. Any other approach would be reaction to speculation. An exercise not favored by the courts.

The defendants additionally assert that the TCPA's damage clause violates the Due Process of the Fifth and Fourteenth Amendments, as well as, the excessive fine clause of the Eighth Amendment.

---

[5] *Zoes v Banctrust* 03 CH 17879

The Due Process Clause of the Fifth and Fourteenth Amendments prohibit federal and state governments, respectively, from imposing a "grossly excessive" punishment on a tortfeasor. TXO Production Corp. v. Alliance Resource Corp., 509 U.S. 443, 454 (1993). In order to make this determination, the Court must first identify the interest the government seeks to protect and then determine whether the award is grossly excessive in relation to those identified interests. TXO, 509 U.S. at 456.

The Court has already identified those interests as preventing the shifting of advertising costs to potential consumers and promoting the efficient operation of this nation's businesses. The Court also notes that each defendant received adequate notice of the potential penalty if their conduct deviated from the required norm. Thus, the Supreme Court's decision nullifying an award for punitive damages on the basis of lack of notice is inapposite. BMW of North American v. Gore, 517 U.S. 559 (1995). Unlike the situation before the Court here, BMW was not sufficiently informed that the same conduct which was acceptable in some jurisdictions, but not in others, was subject to a penalty 500 times greater than the actual loss. It is clear the penalty here is even greater, but unlike the operators of BMW who had no notice that the procedure employed ran afoul of the law in Alabama, the statute clearly proscribes the conduct before any defendant acted. Thus, the standard to be applied is more properly found in St. Louis, *Iron Mountain & Southern Railway v. Williams*, 251 U.S. 63 (1919). There the Court acknowledged the wide latitude that legislatures have in protecting public interest, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established law. This Court is wary of substituting its judgment for that of Congress. The Court is concerned about the potential damage claims in this case. *However, no evidence has been introduced quantifying the amount of damages incurred by businesses in lost productivity.* Thus, no mathematical certainty can be reached as to the relationship between actual damages and the penalty imposed. Any penalty computed by multiple violations would be a result of the defendants use of technology to aggressively violate a statute which is clear on its face. *However, this issue must await full resolution until all of the evidence is heard, so a complete record can be established.*

Thus, the Court does not find the TCPA imposes a sanction grossly disproportionate to the interests sought to be protected.

Turning now to the Eighth Amendment excessive fine issue. This analysis is similar to that under the prior Due Process inquiry. A fine is a valid exercise of legislative prerogative unless it is grossly disproportionate to the nature of the violation. *United States v. Bajakajian*, 524 U.S. 321 (1998). However, as the dissent in that decision noted, substantial deference must be given legislative determination as to sanctions for illegal authority. *Bajakajian*, 524 U.S. at 348. As noted, on this record, this Court cannot make such a determination, thus, the Motion to Dismiss is denied. Having found the TCPA constitutional the Court moves to analyze the remaining issues.

**B. Availability of a Private Right of Action**

The defendants assert that no private action for violation of the TCPA can be maintained in Illinois Courts because Illinois has never authorized the prosecution of TCPA matters in its courts, providing only for criminal sanctions.

Article VI of the United States Constitution provides that the laws of the United States made pursuant to the Constitution "shall be the supreme Law of the Land, and the Judges in every State shall be bound thereby."

In Testa v. Katt, 330 U.S. 386 (1947), the Court was called upon to determine whether Rhode Island's courts could properly refuse to hear a claim brought under the Emergency Price Control Act. Unlike the TCPA, this law gave concurrent jurisdiction to Federal, State, and Territorial Courts to entertain these claims. The basis for the declination by the Rhode Island Courts was the traditional right enjoyed by the states to enforce penal laws of a foreign state. The Court noted that since the time of the first congress, laws have been enacted conferring jurisdiction on state courts to enforce federal penal statutes. While disputes raged over the relationship between federal and state governments during the first half of the 19th Century and ultimately, albeit temporarily were resolved by war, the Supreme Court has been predictably steadfast in holding, "If an Act of Congress given a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not been forced, if not provided otherwise by some act of Congress, by a proper action in a State Court." Claflin v. Houseman, 93 U.S. 130, 137 (1876). Thus, in Testa, the Court dismissed as inadmissible the argument that the state's law must be consistent with the federal regulatory scheme.