**Westlaw.**

Not Reported in N.E.2d  
Not Reported in N.E.2d, 2004 WL 3135348 (Ill.Cir.)  
(Cite as: Not Reported in N.E.2d)

Page 1


Kim v. Sussman  
Ill.Cir.,2004.  
Only the Westlaw citation is currently available.Ben H. KIM, Plaintiff,  
v.  
Jay SUSSMAN, Defendants.  
No. 03 CH 07663.

Oct. 19, 2004.

ORDER  
MASON, J.  
*1 This matter comes before the Court on plaintiff Ben Kim's, motion for class certification. Plaintiff brought this action after receiving an unsolicited facsimile transmission from the defendant, Jay Sussman. Defendant's solicitation was sent through a Canadian entity, Canafax. The complaint contains three counts. Count I alleges that defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (" TCPA" ), by sending unsolicited facsimile transmissions without the recipient's " express invitation or permission."  Count II alleges that defendant committed the tort of conversion by using plaintiff's paper and toner to print the facsimile transmission. Finally, Count III alleges that defendant violated the Illinois Consumer Fraud Act, 815 ILCS 505/2 (" ICFA" ), in that defendant's fax solicitation constituted an unfair business practice.

The focus of the parties' arguments relating to class certification has been plaintiff's TCPA claim in view of the fact that Congress expressly designed the TCPA to remedy the harm caused by receiving unsolicited faxes. The TCPA, enacted in 1991, was intended to address the nuisance posed to individuals and businesses by the receipt of unsolicited fax transmissions. The law prohibits the use of " any telephone facsimile machine computer, or other device to send an unsolicited advertisement to a telephone facsimile machine" 47 U.S.C. § 227(b)(1)(c). The statute further creates a private right of action allowing a " person or entity" to bring an action in state court for injunctive and monetary

relief. Recoverable damages are the actual monetary loss as a result of the violation or $500 per violation, whichever is greater, and if the Court finds a willful or knowing violation of the statute, the court may increase the award up to $1500 per violation. Id. at (b)(2)(c)(3).

The TCPA further vests exclusive jurisdiction in federal courts over actions by the various state attorneys general alleging that any person has engaged in repeated violations of the Act and authorizes injunctive and monetary relief in the amounts provided for individual violations. In commenting on the TCPA, Senator Ernest Hollings stated: " Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer."  137 Cong. Rec. S16205 (November 7, 1991). It is in this context that the Court evaluates plaintiff's motion to certify a class of all persons who received unsolicited faxes from defendant.

Pursuant to Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, plaintiff must satisfy four prerequisites for maintenance of a class action: (1) the class is so numerous that joinder of all members is impracticable, (2) questions of fact or law common to the class predominate over individual issues; (3) there exists adequate representation for the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy. Of the foregoing prerequisites, defendant contests the first, second, and fourth. Adequacy of representation is undisputed.

*2 Defendant disputes that " the class is so numerous that joinder of all members is impracticable" and that questions common to the class predominate over individual issues. Although there is no bright line test to determine numerosity, the Illinois courts generally follow the reasoning that greater than 40 parties satisfies numerosity, but less than 25 people is insufficient.Wood River Area Development Corp. v. Germania Federal Savings and Loan Ass'n, 198

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ill.App.3d 445, 449-50, 144 Ill.Dec. 631, 555 N.E.2d 1150 (5th Dist.1990). In this case, plaintiff has identified six fax recipients, two of whom purchased policies of insurance from the defendant after receiving the solicitation. At the hearing on plaintiff's motion, plaintiff's counsel represented that approximately ten more recipients had been identified. Plaintiff contends that the Court can infer the number of class members from the cost of the fax. Plaintiff extrapolates that based on a total payment by defendant of $1527.04, and an estimated cost of $0.10 per transmission, approximately 15,270 faxes were sent. However, although this action has been pending for over one year, plaintiff has failed to take the obvious steps to provide a reasonable estimate of the number of class members, such as obtaining information from Canafax (the company that actually transmitted the solicitation) as to the number of faxes actually sent. The Court questions whether reliance on estimates is justified given the availability of discovery methods that would enable the numerosity issue to be precisely determined. As to the predominance factor, several courts have concluded, in the context of a motion for class certification under the TCPA, that individual issues, including each individual class member's burden to demonstrate that the transmission in question was unsolicited, preclude class certification. See _Kondos v. Lincoln Prop. Co.,_ 110 S.W.3d 716, 721-22 (Tex.Ct.App.2003); _Livingston v. U.S. Bank, N.A.,_ 58 P.3d 1088, 1090-91 (Colo.Ct.App.2002); _Forman v. Data Transfer, Inc.,_ 164 F.R.D. 400, 403-04 (E.D.Pa.1995). The Court finds the reasoning of these authorities persuasive, but notes that there exist other authorities supporting plaintiff's position. See _Kaufman v. ACS Systems, Inc.,_ 110 Cal.App. 4th 886, 110 Cal.App.4th 886, 2 Cal.Rptr.3d 296, 328 (2003); _Nicholson v. Hooters of August, Inc.,_ 245 Ga.App. 363, 537 S.E.2d 468 (2000).

Yet, even if the Court were to find in plaintiff's favor on the numerosity and predominance issues, class certification would nevertheless be denied. Given the statutory framework of plaintiff's claims, the Court strongly believes that a class action is not an appropriate method for the "fair and efficient" adjudication of this controversy. As noted above, in enacting the TCPA, Congress expressly struck a balance that was designed to be fair both to the recipient and the sender of the facsimile. Congress believed that allowing an individual to file an action in small claims court to redress the nuisance of unsolicited faxes and to recover a minimum of $500 in damages was an adequate incentive to address what is at most, a minor intrusion into an individual's daily life. Congress added harsher penalties for chronic or willful violators in the form of actions in federal court by the various state attorneys general, in which the potential for substantial award of damages exists. To engraft on this statutory scheme the possibility of private class actions, with potential recoveries in the millions of dollars, strikes the Court as unfair given the nature of the harm Congress attempted to redress in the TCPA.

*3 Furthermore, certification of a class in this case poses several administrative problems, not the least of which is that in order to notify absent class members of the pendency of this action, another "unsolicited" facsimile transmission will have to be sent. This is because the only practical way of identifying potential class members would be to use the same transmission list (if it still exists) that Canafax used in sending out the original solicitation. Although such a transmission, not constituting an advertisement, does not fall within the parameters of the TCPA's prohibitions, the irony of sending out what plaintiff estimates will be 15,000 facsimiles to notify class members of their inclusion in a class in this case is inescapable. In addition, the one-page transmission from defendant was sent well over one year ago. The likelihood that anyone to whom notice of the pendency of this case was sent would recall receipt of defendant's solicitation, much less have retained a copy, is remote, at best. Therefore, the only potential, albeit indirect, corrboration for any given claim would be the fact that the recipient's fax number matches one on the Canafax list. In effect, by certifying a class in this case, the Court would be sanctioning the dedication of substantial judicial and administrative resources to the identification and compensation of a class of persons who, in all likelihood, immediately discarded the offending transmission and were not sufficiently annoyed by it to pursue the virtually guaranteed remedy provided to them under the TCPA.

Analyzing plaintiff's motion for class certification in the context of his other claims for conversion and violation of the Illinois Consumer Fraud Act yields no different result. Unlike the TCPA, a plaintiff claiming conversion or a violation of the Consumer Fraud Act is limited to recovering actual damages. The "actual" damages suffered by members of the putative class, assuming, in fact, that defendant converted the paper and toner necessary to print the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2004 WL 3135348 (Ill.Cir.)
(Cite as: Not Reported in N.E.2d)

Page 3

offending solicitation or engaged in an "unfair" business practice, are miniscule, *i.e.*, pennies per plaintiff. See *Hayna v. Arby's Inc.,* 99 Ill.App.3d 700, 55 Ill.Dec. 1, 425 N.E.2d 1174 (1st Dist.1981). The wisdom of certifying a class to redress such *deminimis* claims has been questioned. See *Rudgayzer & Gratt v. LRS Communications, Inc.,* 3 Misc.3d 159, 776 N.Y.S.2d 158 (N.Y.Civ.Ct.2003). Particularly where, as here, Congress has designed a statutory scheme to "incentivize" the holder of such a claim to file suit, the necessity of invoking a class action to redress these alternative claims is diminished.

The denial of class certification in this case does not leave plaintiff without a remedy-the remedy designed by Congress to address this nuisance. Assuming that the 16 or so individuals plaintiff has identified pursue their claims and are each awarded the minimum $500 per violation, it will have cost defendant over $9500 for his violation of the TCPA-the $1527 he originally paid Canafax plus $8000 for the plaintiffs who complained of the unsolicited advertisement. Such a sum is clearly sufficient to punish past and discourage future violations of the Act. On the other hand, certifying a class threatens to impose on defendant a virtually automatic liability to thousands of individuals in a sum that dwarfs the magnitude of the harm involved. Congress clearly did not intend to cripple individuals and entities using broadcast facsimile transmissions to solicit business.[FN1] Instead, it devised a streamlined remedy designed to be "fair" to both the recipient and the sender of the fax. To certify a class under these circumstances would upset that balance.

> FN1. It is no answer, as plaintiff suggests, that defendant's insurance carrier may ultimately be obligated to cover the amount of the judgment in this case. The availability of insurance for a particular claim does not enter into the analysis of whether a class action is the appropriate method for adjudication of the controversy. Further, the possibility of passing the loss on to another entity that could, in turn, raise premiums, draft exclusions or decline future coverage altogether has its own ramifications which counsel against class certification in this case.

*4 For the foregoing reasons, plaintiff's motion for class certification is denied.

Ill.Cir.,2004.
Kim v. Sussman
Not Reported in N.E.2d, 2004 WL 3135348 (Ill.Cir.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.